611 F.2d 26
 102 L.R.R.M. (BNA) 2815, 87 Lab.Cas. P 11,648
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ATLAS LUMBER COMPANY and Local Union 522 International
Brotherhood of Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Respondents.
 No. 79-1286.
 United States Court of Appeals,
Third Circuit.
 Submitted Oct. 19, 1979.
Decided Nov. 7, 1979.
 
 John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, William R. Stewart, Deputy Asst. Gen. Counsel, Susan S. McDonald, Atty., N.L.R.B., Washington, D. C., for petitioner.
 Charles R. Katz, P. C., Richard M. Greenspan, New York City, of counsel, for respondent, Local 522.
 Miller & Bush, Irving T. Bush, New York City, of counsel, for respondent, Atlas Lumber Co.
 Before GIBBONS and HIGGINBOTHAM, Circuit Judges and ZIEGLER, District Judge.*OPINION OF THE COURT
 GIBBONS, Circuit Judge.
 
 
 1
 The National Labor Relations Board petitions pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C. §§ 151-187, 160(e) (1976), for enforcement of its order against Atlas Lumber Company (Atlas) and Local Union 522, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (Local 522). The order prohibits Atlas from recognizing Local 522 as the exclusive bargaining representative of its employees or from giving effect to a collective bargaining agreement between Atlas and Local 522.[1] The Board held that Atlas violated section 8(a)(1) and section 8(a)(2) of the Act and that Local 522 violated section 8(b)(1)(A) of the Act when on May 16, 1977 they entered into a contract at a time when Local 522 did not represent a majority of employees of the appropriate bargaining unit. We deny enforcement of the order.
 
 
 2
 Atlas, a new business, commenced operation as a building supply dealer at Camden, New Jersey, on April 15, 1977. On April 20, Local 522 wrote to Atlas stating that it intended to organize the employees of Atlas. Some time in April, an Atlas employee, Miller Garrett, approached Local 326, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (Local 326), and obtained authorization cards from Local 326. Atlas had ten or eleven employees at the time, and by May 4 Garrett had obtained at least seven authorization cards. On May 4, Local 326 wrote to Atlas:
 
 
 3
 This is to advise you that a majority of your Drivers and Yard employees have signed authorization cards indicating their desire to have this Local Union represent them.
 
 
 4
 We have been in contact with your employees and are now actively organizing them. We request your co-operation and ask that you abide by their wishes in accordance with the applicable law.
 
 
 5
 Please consider this letter a request for recognition on their behalf in accordance with the applicable law.
 
 Very truly yours
 Frank Sheeran
 President
 
 6
 Letter from Frank Sheeran to Mr. Bernie Liedman (May 4, 1977).
 
 
 7
 This letter was not received by Atlas until May 9. No officer of Local 326 ever visited Atlas or made contact with any Atlas employee other than Garrett. Local 326 had no information about the size or composition of an appropriate Atlas bargaining unit at the time when Sheeran wrote the May 4 letter. In May, 1977, Local 326 did not represent any bargaining units in New Jersey.
 
 
 8
 On May 13, James Rizzo, a business representative of Local 522, appeared at Atlas' Camden facility and asked Bernie Liedman, Atlas' president, to agree to the terms of an existing contract between Local 522 and the Building Supply Dealers of New Jersey, a multi-employer bargaining unit. Liedman declined to do so unless Local 522 offered proof that it represented a majority of the Atlas employees. Prior to the May 13 meeting, Local 522 had had no contact with any of those employees.
 
 
 9
 On May 16, Rizzo returned to Atlas with authorization cards from ten employees, nine of whom had previously signed authorization cards for Local 326. There is no evidence that Atlas knew anything about the number of cards held by Local 326 other than the information as represented in Sheeran's May 4 letter. Liedman, after verifying the employee signatures on the ten Local 522 cards, signed a memorandum agreement with that Local binding Atlas to the Building Supply Dealers of New Jersey contract. On May 23, ten days after the contract was signed, Local 326, having learned of Local 522's card solicitations, filed a representation petition with the Board.
 
 
 10
 Unfair labor practice charges were filed by the General Counsel on June 10. The General Counsel did not allege any interference or coercion by or on behalf of Atlas or Local 522 in the latter's card solicitation. The Board's order is based solely on its determination that Atlas signed a contract with Local 522 at a time when Local 522 did not represent a majority of its employees. That determination is predicated upon the Board's finding that the execution, after May 16, of Local 522 authorization cards, by nine employees who had previously executed Local 326 cards, was not a repudiation of Local 326 as a bargaining representative. By subtracting the cards of these nine employees from Local 522's total of ten cards, the Board held that Local 522 was a minority union when the contract was signed.
 
 
 11
 We conclude that the Board's basis for its determination of minority status the absence of a repudiation of Local 326 is not supported by substantial evidence in the record as a whole, and that the Board's decision in this case is inexplicably inconsistent with its decision in Wavecrest Home for Adults, 217 N.L.R.B. 227 (1975).
 
 
 12
 In support of its factual determination that there was no repudiation, the Board relies on several factors which are simply irrelevant. First, it points out that Local 326 made a demand for recognition received by Atlas on May 9. There is no indication of employee knowledge that Atlas had received this demand, and Atlas' possession of it in no way illuminates the employees' intention in signing authorization cards for Local 522. The Board also urges that "(i)nexplicably, the Company made no response to Local 326's request." Brief for Petitioner at 10. Again, however, this factor cannot bear on the employees' intention. It is undisputed that their decision to sign Local 522's cards was uncoerced by Atlas. Two employees testified that they signed Local 522 cards because they had not heard from Local 326 in the 12 days after they signed Local 326 cards. The Board refused to attach significance to that undisputed testimony, while giving weight to the fact that representatives of Local 522 solicited cards for that Local in a single meeting with the employees.
 
 
 13
 In Wavecrest Home for Adults, 217 N.L.R.B. 227 (1975), an employee organizer had, as here, solicited cards on behalf of one union. When that union failed to take steps to obtain recognition during the next month, the same organizer obtained cards from a majority of the employees for a second union. After verifying the cards, the employer recognized the latter. Id. at 228-29. The employer had no knowledge that the employees had signed with the first union, but that fact was not particularly significant, because majority status is objectively determined and proof of a section 8(a)(2) violation does not require scienter. International Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 739, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). The Board held that "the employees, by signing cards for (the second union), intended to repudiate the authorization cards they had previously signed on behalf of (the first union), and thereby manifested their desire for exclusive representation by (the second union)." 217 N.L.R.B. at 227 n.2. In this record there is the same evidence of repudiation relied upon in Wavecrest, with the exception that the absence of contact between the first union and the employees obviously the most significant factor in determining their state of mind continued for a somewhat shorter time. There are, however, additional factors pointing toward repudiation, including the fact that Local 522 was already representing employees in the same industry in New Jersey, while Local 326 was not, and the fact that officials of Local 522 appeared personally and spoke to the employees, while officials of Local 326 did not. These facts are undisputed, and no testimony to which the Board refers us tends to support a finding of continued adherence to, rather than repudiation of, Local 326. The Board's finding of an absence of repudiation is not supported by substantial evidence in the record as a whole. Absent that finding, Local 522 had a card majority when the contract was signed. Thus we could enforce the Board's order only if we were to repudiate our previous holdings that an employer is not required to insist upon an election, when presented with an uncoerced card majority, merely because a second union has asserted an interest in representing some of the employees. E.g., Eisenberg v. Hartz Mt. Corp., 519 F.2d 138, 143 (3d Cir. 1975); Suburban Transit Corp. v. NLRB, 499 F.2d 78, 82-83, 85-86 (3d Cir.), Cert. denied, 419 U.S. 1089, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974); NLRB v. Air Master Corp., 339 F.2d 553, 556-57 (3d Cir. 1964).
 
 
 14
 The petition for enforcement of the Board's order will be denied.
 
 
 
 *
 Hon. Donald E. Ziegler, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Atlas Lumber Co., 237 N.L.R.B. No. 87, 99 L.R.R.M. 1046 (1978)